HALL H. HAYMOND, *Executor v.* FIRST NATIONAL BANK
OF SALEM *et al.*

(No. 7880)

Submitted September 11, 1934.   Decided September
25, 1934.

*Ray L. Strother,* for appellant.
*Harvey W. Harmer,* for appellee Sarah E. Day.

WOODS, PRESIDENT:

Hall H. Haymond, executor of the estate of Laura A.
Williams, deceased, in a suit to settle the estate, sought,
among other things, to have a certain secured·debt purg-
ed of an alleged usurious charge.   The chancellor found
for the creditor on the issue of usury, and entered an
order directing sale. of the property securing the debt.
The plaintiff appeals.

In November, 1926, Hall H. Haymond, at the instance
of his mother, Laura A. Williams, who was in the hos-
pital and in need of money, went to Blaine Hamrick, in

response to an advertisement, "If you want money, see me," for the purpose of negotiating a loan of $1,600.00. On the initial visit he was advised by Hamrick that the latter had certain prospects in mind and thought he could get him the money. Hamrick discussed the loan with James A. L. Day, who stated that he would get it from his wife; that she had ten or eleven hundred dollars to loan. Haymond was informed on his second visit that the money was obtainable, but that he would have to pay something, possibly $100.00, to get it, in addition to a $50.00 fee to Hamrick for abstracting the title for the lender, and for preparing the other necessary papers. A six-month note bearing date December 16, 1926, in the sum of $1,600.00, at six per cent interest, payable to Sarah E. Day, and a deed of trust securing same, were prepared by Hamrick and placed in Haymond's hands. After Mrs. Williams had executed the same, Haymond, on December 22, 1926, presented them to Hamrick. Day was notified, and appeared. Haymond was required to place his signature on the note, as accommodation maker. Then Day turned over to Hamrick a check, bearing date December 22, 1926, payable to the latter, in the sum of $1,600.00, and signed by Sarah E. Day, as maker. Hamrick thereupon delivered his personal check in the sum of $1,420.00, to Haymond as payee. Haymond inquired concerning the amount. Hamrick replied, according to Haymond, that there were several charges—$25.00 for insurance on building, and a $50.00 fee for himself for work in connection with the loan. And upon further inquiry concerning "the other amount", Hamrick informed Haymond that that was Day's charge for services—a bonus. Neither Haymond nor Hamrick ever saw Sarah E. Day, the alleged lender, until years after the loan was consummated.

Day made regular calls upon Haymond for the purpose of collecting payments and interest charges. Haymond made his checks payable to James A. L. Day. The latter always cashed the checks, turning the proceeds over to his wife. After the property had been advertised for sale, Haymond went to the Day home and requested more

time. Although the wife was agreeable, the husband refused, stating that he would have to see his attorney first. Both husband and wife testified that the latter had not authorized the exaction of the $105.00 bonus by the former, and had no knowledge thereof.

The plaintiff insists that the estate is entitled to a credit of $105.00, together with interest, against the balance due the lender on the promissory note, on the ground that the loan is usurious to that extent.

Under our statute (Code 1931, 47-6-6) "all contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than six per cent * * * shall be void as to any excess of interest agreed to be paid above that rate." Although a principal is not liable for a usurious agreement of his agent which is entered into without his knowledge or consent and under circumstances which do not impute to him a knowledge thereof, the courts have been fairly uniform in holding the principal bound, where the usurious agreement of an agent is either expressly or impliedly authorized or ratified by the principal, or where the circumstances are such that the agent's conduct is presumed to be known to him. 21 R. C. L. 864, sec. 39.

It is the position of the plaintiff that the husband-agent's exaction from the debtor of a bonus is to be deemed, under the rules applicable to the relation of principal and agent, to be expressly or impliedly authorized or ratified by the principal. In other words, that the circumstances in the instant case, including the fact that the principal and agent are wife and husband, respectively, are such as to imply knowledge to the former of the latter's conduct. And, such being the case, that the debt, to the amount of $105.00, with interest, is usurious.

It is clear from the evidence of both Hamrick and Haymond that the latter knew that a bonus was to be exacted in connection with the delivery of the money in addition to Hamrick's fee for services. In other words, Haymond did not agree to pay Hamrick $175.00 or $180.00 for se-

curing the loan. The implication is that Day, in effect, assured Hamrick that in consideration of a $100.00 bonus he (Day) would get the money from his wife, although the testimony is that she only had ten or eleven hundred dollars at the time. It is not shown where the additional five hundred dollars came from. By reason of the interest of the husband, it could have been advanced by him. The wife was directed by her husband to write the check in favor of Hamrick, as payee. This had a tendency to cover up the bonus as merely a portion of a fee to Hamrick for securing the loan. The admissions of the wife show that the loan was made by her upon advice of her husband; that she entrusted the whole matter to him. While she did execute the check, the husband negotiated the loan for and on her behalf, prescribing its terms, passing on the security offered, and doing all things with reference thereto which the wife might have done if personally present. He made collections, and even refused an extension of time to the borrower, after property had been advertised for sale, until he could see an attorney—and this, in the face of his wife's suggestion that more time be granted. He was her *alter ego* in the transaction, and his exaction of the exorbitant rate was her exaction. Having accepted the benefits of the transaction, can she evade the usury charge on the mere verbal denial of knowledge of such exaction by her husband?

Where the wife, as here, permits the husband to virtually dictate her business negotiations, and accepts benefits thereunder, she will be presumed to have authorized, or to have known of the usurious exaction, and the burden of showing the contrary rests on her. *Freedman* v. *Katz*, 246 Mich. 296, 224 N. W. 325. Since it is common knowledge that the most frequent device employed to effect usury is through the use of the name of some relative, for whom the lender acts as ostensible agent, courts are continually called upon to scrutinize business dealings with care to see that the law is not evaded. And this certainly is true in situations where a husband, as ostensible agent for the wife, exacts a "bonus" or "com-

mission" in addition to the lawful rate of interest. In such cases courts should require that the alleged principal show good faith by the strongest available evidence, and not permit uncorroborated denials of knowledge on the part of principal and agent to control. In view of all the circumstances surrounding the transaction, it is quite clear that the wife, in the absence of any evidence corroborating denials of knowledge or authority, must, in law, be held to have authorized the exaction of the bonus in this case, or to have had knowledge of such exaction.

The finding of the chancellor that the loan was not tainted with usury must therefore be reversed, and the cause remanded.

*Reversed and remanded*